MILDRED DAKOVICH, appellee, v. CITY OF DES MOINES, appellant.

No. 47561.

(Reported in 42 N.W.2d 511)

MAY 2, 1950.

Frank B. Hallagan, S. L. Harvey and Frank D. Bianco, all of Des Moines, for appellant.

Raymond E. Hanke, of Des Moines, for appellee.

WENNERSTRUM, J.—Plaintiff sought in a law action to recover damages for claimed personal injuries received when the car in which she was riding struck an earth embankment and ditch on one of the streets of the defendant-city. This condition had resulted from the digging of a ditch in the street in order to provide sewer and water connections for a near-by improvement. The trial court submitted the case to the jury which returned a verdict for $2500 in favor of plaintiff. The defendant filed motions in arrest of judgment, for judgment notwithstanding the verdict and for a new trial, all of which were overruled. The defendant has appealed.

The appellee was seated in the front seat of an automobile driven by Don Smith at the time of and immediately prior to the accident, which occurred about 8:45 p.m. on June 21, 1948. Albert Schmidt and Jean Jones were in the back seat. The car in which these parties were riding was proceeding down a hill on East 29th Street, which has a black top surface. It was stipulated that the speed limit for this street in the vicinity of the accident was 35 miles an hour. The driver of the car testified that he was traveling at the rate of 25 miles an hour at the time the automobile struck the embankment. He also stated that as he proceeded down the hill he had his foot off the accelerator and that the clutch and brake were not touched. He testified that when within about ten feet of the earth embankment he applied the brakes but struck the earth pile in the street and proceeded over the ditch and hit the pile of earth on the other side where the car stopped. At the time of the accident the automobile was traveling in the center of the street.

This witness stated he never saw any lights near the ditch or the dirt embankment, that the headlights of the automobile were on all the time and that they lighted the road for a distance of 25 or 30 feet. He also stated that the windshield was clear and that the brakes of the automobile were functioning properly.

The appellee testified that just before they got to the dirt embankment she made an outcry. Albert Schmidt, one of the occupants of the automobile, stated he did not see any lighted flares when he got out of the car and that he touched one of them and it was cold. He also testified that later he saw a police officer try to light one of the flares and it would not light. Milenko Dakovich, a brother of the appellee, testified that he was at the scene of the accident shortly after it happened and that there were no lighted flares at that time.

A witness for the appellant, Forrest Daniels, a bus driver for the Des Moines Street Railway Company, testified that he had proceeded south along East 29th Street, passed the earth embankment about 8:20 p.m. and that he noticed a couple of flares on the west side and a lantern near the middle of the pile of earth. He also stated that about 8:35 p.m. on his return trip he passed on the east side of the excavation and noticed the lantern in the middle and two flares on the east side of the embankment. Another witness for the appellant, Jesse B. Smith, testified that shortly after eight o'clock he and two men friends drove along the street where the embankment was and that the flares were lighted. Raymond Telford, another witness for the appellant, and an occupant of the Jesse B. Smith automobile stated that he saw a lantern and two flares in the middle of the road at this same time. Robert J. Hagge, also an occupant in the last referred to automobile, stated that at the time the car passed the embankment he saw flares and lights burning on the pile of dirt but he did not know how many. A police officer, J. G. Horsburgh testified that he arrived at the scene of the accident about nine o'clock and saw one flare lighted on the southeast corner of the pile of dirt. A witness for the appellee, Florence Rodgers, testified that she got off a bus near the scene of the accident about 8:35 p.m. and that there were no lighted flares.

Ralph Darrah, an employee of the company installing the sewer and water connections testified that he went to the point where this improvement was being made shortly after seven o'clock on the evening of the accident and that he put lighted flares on each corner of the ditch and a lighted lantern on the middle of the dirt pile on the south side of the excavation. He further testified that on the north side of this opening the earth was about 2½ or 3 feet high and about 3 or 3½ feet wide at the bottom and was about 11 feet long. On the south side of the ditch the earth was about 7½ feet wide at the base and tapered up to about 4 feet wide at the top and was 11 feet long and about 5 feet high. He stated that the lantern was about 5 feet up in the center of the pile of earth. He also testified that after returning home, he was called and told to go out and again light the lantern and flares and that he did not find the lantern until the next day when he discovered it 150 feet down the hill. He further stated that the dirt pile was leveled down flat and that the earth was scattered for about 40 or 50 feet.

The extent of the injuries to the appellee was shown by the testimony of an osteopathic physician and surgeon. He stated she had a wound on the right side of her forehead near the temple which necessitated six sutures to close, that she had an injury to the cartilage in the inside of her left knee, one of her ankles was sprained and that she had a shoulder injury on her left side. He testified that she would recover from her ankle and shoulder injuries but there was a cartilage displaced in the knee. It was his testimony that there was only one cure for that injury and that would be by surgery to remove the cartilage but that he did not like to have this done unless it was necessary. He also testified it was difficult to observe the scar on appellee's forehead and that she was making satisfactory progress in her recovery. It is shown that X-ray pictures were taken which disclosed there were no skull or other fractures.

The appellee testified that when the car struck the earth embankment the right side of her forehead hit the windshield and that she was taken to the hospital where the cut on her forehead received attention. She testified that she did not sleep well the night of the accident, that her knee was sore and she

had a pain in her back, that she could not sleep well for several days after the accident, that she was sore and dizzy and that her back bothered her when she tried to work three weeks later. She stated that she worked about two weeks during which time her head ached, that she suffered dizziness, that her back and knee bothered her and that she suffered fatigue. It was also stated that up to the time of the trial her head pained her, that she could not keep up her housework for three rooms and that she had continued under the care of her physician.

I. The appellant asserts that the court committed error in its refusal to hold that the appellee was guilty of contributory negligence as a matter of law and to consequently sustain the appellant's motion for a directed verdict and subsequent motions based, in part, on the same ground. It is also claimed that the court erred in failing to hold as a matter of law that the appellant-city was free from negligence and that its negligence, if any, was not the proximate cause of the appellee's injury. It is contended that the appellee failed to sustain her burden of proof as shown by the variance between the allegations of appellee's petition and the proof presented. We shall consider these two claimed errors jointly.

It is the claim of the appellant-city that the testimony of the driver of the automobile shows that he must have been traveling at a rate of speed of approximately 60 miles an hour. The basis for this contention is that this witness stated he drove a distance of three miles in five minutes and that he had stopped at an intervening point for a period of at least two minutes. It is further contended that if other testimony of the driver is considered to the effect that the car had been traveling at a speed of 25 miles an hour and had covered the distance of three miles in five minutes that consequently it would have been traveling at least 36 miles an hour which would be in violation of the speed limit of 35 miles fixed for the particular street on which the accident occurred.

Our attention is called to section 321.285, 1946 Code, which is a speed-restriction statute. It, in part, provides that "* * * no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to

assume, however, that all persons using said highway will observe the law." Another statute which the appellant contends is applicable to the facts in the instant case is section 321.297, 1946 Code, which is as follows: "The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street."

There is no direct proof that the driver of the car in which the appellee was an occupant was traveling at the rate of 60 miles an hour. This conclusion on the part of the appellant is deduced because of the claimed time that was required to travel a certain distance. On the other hand, the driver of the automobile involved in the accident stated he was going 25 miles per hour. With this claimed variance in testimony we feel that it was for the jury to decide as to the rate of speed he was traveling at the time of the accident.

The question is presented whether the driver of the car in which the appellee was riding was guilty of negligence, which contributed to the appellee's injury. In this connection it should be stated that the trial court in its instructions stated, in substance, that the driver and the occupants of the car were engaged in a joint enterprise and that the negligence, if any, of the driver was the negligence of the appellee. This instruction was not questioned or excepted to by the appellee or appellant. It is claimed that the evidence shows conclusively that the driver drove negligently into the dirt embankment and was not driving his car so as to be able to stop it within the assured clear distance ahead. It is contended that the evidence would justify us in so holding as a matter of law. In the case of Jeck, administrator, v. McDougall Construction Co., 216 Iowa 516, 518, 246 N.W. 595, it was held under circumstances somewhat similar to the facts presented in the instant case that where the evidence is in dispute whether there were lights on a stalled cement mixer the question of the driver's negligence was properly for the jury. To this same effect is the case of Kimmel v. Mitchell, 216 Iowa 366, 249 N.W. 151. It was there held that it was for the jury to determine the question of the claimed negligence of the driver of an automobile which collided with the rear of a stalled truck partially on the shoulder and partially on the traveled part of the highway.

The claim that the driver of the car was guilty of negligence in that his car was not under such control as to be able to stop it within the assured clear distance ahead has been commented on in the case of Prewitt v. Rutherford, 238 Iowa 1321, 1329, 30 N.W.2d 141. We therein held that where a car had struck the rear of an unlighted truck the facts there shown did not justify holding that the plaintiff in that case was guilty of contributory negligence as a matter of law under the assured-clear-distance-ahead statute. See also Central States Electric Co. v. McVay, 232 Iowa 469, 473, 5 N.W.2d 817–820; Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N.W.2d 204.

We are conscious of the fact that there is credible evidence that there were lighted flares and a lighted lantern around and on the dirt embankment. However, on the other hand, there is evidence that they were not burning at the time of the accident. It is not for us to say the witnesses for the appellant are so much more credible than the witnesses for the appellee that we can hold as a matter of law that the driver of the automobile was guilty of negligence. That question, as well as the credibility of the respective witnesses, was for the jury.

■■■ The appellant claims there should have been a directed verdict in its favor because the car involved in the accident was being driven in the center of the street and in violation of section 321.297, 1946 Code, previously set forth. Although this section is not worded the same as the one referred to in the case of Smith v. Town of Hudson, 202 Iowa 300, 304, 207 N.W. 340, 342, yet the applicable portions of the two statutes are alike. In the last cited case we said:

"The evidence shows that there were no other travelers in the street at that time. No rights and duties of travelers in the street as between each other are involved. The law of the road has reference primarily to those duties and rights. It is not claimed that driving on the left-hand side of the street was negligence *per se,* nor could such a contention, if made, be sustained. [Citing cases.]

"Speaking exclusively to the question of the rights and duties of the plaintiff and of defendant town, as related to the present controversy, there having been no other travelers using

the street at the time, the plaintiff had the right to be at any place in the traveled part of the street, and was not a wrong-doer, or negligent, merely because she was to the left of the center of the street."

Under the authority quoted and the facts presented in the instant case we hold that the acts of the driver of the automobile in driving in the center of the street did not constitute negli-gence under the circumstances and would not justify such a holding as a matter of law.

II. It is a further claim of the appellant that the trial court failed to instruct the jury relative to the claimed negligence of the driver of the automobile in failing to observe the speed restrictions set out in Code section 321.285. The court, in one of its instructions, did state that it was the duty of the driver of the automobile to exercise ordinary care so that the car was under control and driven at such a rate of speed for the occupant's safety as the exercise of ordinary care would require under all the facts and circumstances. It was further stated that the failure on the part of appellee's driver in respect to the facts mentioned would constitute negligence and if such negli-gence contributed to appellee's injuries in any manner or de-gree then she could not recover.

The appellant did not submit a written requested instruc-tion relative to speed and the assured-clear-distance-ahead stat-ute, as provided by rule 196, R. C. P. However, counsel for appellant, under the rule just mentioned, did object to the court's failure to instruct relative to the restrictions mentioned in sec-tion 321.285. In re Will of Soderland, 239 Iowa 569, 583[9], 30 N.W.2d 128, 136[11]. It is our conclusion that the objections made of record were sufficient. He did state in his oral objec-tions that "* * * the defendant excepts to the omission of the instruction by the court as to the negligence of the plaintiff and the driver of the automobile in which she was riding in failing to properly observe the speed regulations under the physical facts as disclosed by the evidence in this case, in the distance traveled by the plaintiff, and the driver * * * and the distance traveled by the car during the time the driver stated he first observed the obstruction * * *." Part of the evidence which it is claimed would justify an instruction on speed regulations

under the statute was also called to the court's attention. Following the statement of counsel the trial court stated, "Yes, you want a speed instruction. I am going to overrule that exception." Here the court's reference to exception referred to counsel's objections to the instructions as required by rule 196.

The instruction that the court did give relative to speed referred only to the driver's common-law duty and did not set forth any of the requirements of section 321.285.

It is our conclusion that the jury should have been instructed as to the assured-clear-distance requirement. We hold that a request for such an instruction was unnecessary. It is our further holding that our generally announced holdings that correct instructions are sufficient in the absence of a request for amplification is not here applicable. Sanford v. Nesbit, 234 Iowa 14, 18, 11 N.W.2d 695, 698; Harrington v. Fortman, 233 Iowa 92, 100, 8 N.W.2d 713, 717; Gardner v. Johnson, 231 Iowa 1233, 1235, 3 N.W.2d 606, 607.

The term "speed regulations" mentioned in defendant's objections to the instruction given seems to indicate a legislative requirement rather than a doctrine of the common law. Bonnett v. Oertwig, 234 Iowa 864, 866, 14 N.W.2d 739, 741; Coon v. Rieke, 232 Iowa 859, 863, 6 N.W.2d 309, 311.

It is our conclusion and holding that the trial court was in error in not giving an instruction on the speed regulation set out in the statute.

III. It is the claim of the appellant-city that near the close of the trial an incident occurred which justifies the granting of a new trial. It appears that late one afternoon while the jury was in recess the appellee and her sister were observed in conversation with three of the men jurors. This occurred in the corridor outside the courtroom. It is shown that as they were passing the jurors an inquiry was made by one of the men whether the appellee was becoming tired of remaining around. Some comment was made about the jurors' experiences in other cases on which they had served but no reference was made to the case on trial. Within a short time the bailiff passed this group, called the appellee and her sister aside and suggested that they should not visit with the jurors. The facts and cir-

cumstances here related are materially limited but they adequately set out the true situation.

It is our conclusion that the facts disclosed do not justify our holding that the refusal of a new trial by the trial court was an abuse of discretion necessitating the granting of a new trial.

We shall not analyze all our prior cases that bear upon prejudicial misconduct. It is sufficient to set out what appears to be the general rule as stated in 55 A. L. R. at page 751:

"* * * unless it appears that there has been an abuse of this discretion, the finding of the trial judge will not be disturbed. Although each case must be decided on its particular facts, and a general rule applicable to all cases cannot be formulated, the general principle underlying most cases seems to be that a new trial will be ordered whenever it appears that a communication has tended to create bias or prejudice in the mind of the juror."

In the case of Foedisch v. Chicago & N. W. Ry. Co., 100 Iowa 728, 731, 69 N.W. 1055, 1056, this court stated:

"A verdict will not be set aside merely because a jury member has, in violation of his sworn duty, talked to persons about the case. It must appear that the misconduct was such as to materially affect the substantial rights of the complaining party." (Citing cases.)

IV. The appellant has submitted as a further ground for reversal the contention that the verdict returned was excessive, is not based upon evidence which would justify the amount set by the jury and is a result of passion and prejudice. Inasmuch as we have found it necessary to reverse upon the failure to instruct we do not deem it necessary to here comment upon the claimed error set out in this division.

For the reason heretofore stated this cause is reversed.—Reversed.

All JUSTICES concur.