# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1323

_____

Terrence Washburn, Patricia Washburn,   *
Penelope L. Nicol, Individually and as   *
Trustees of The 727 Realty Trust;   *
The 727 Realty Trust,   *
  *
     Appellants,   *   Appeal from the United States
  *   District Court for the
    v.   *   Southern District of Iowa.
  *
Jerry Soper, Individually and as a   *
Partner of Soper and Tyler,   *
  *
     Defendant,   *
  *
The Soper Law Firm,   *
  *
     Appellee.   *

_____

Submitted:  December 13, 2002

Filed:  February 11, 2003
_____

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

In this diversity action, the district court[1] granted summary judgment against the appellants (collectively, the Washburns), concluding that their malpractice claim was barred by Illinois' two-year statute of limitations. We affirm.

## I. Background

In 1992, George and Janis Garlock purchased an eighty percent interest in the Kwik-Kleen Limited Trust, which owned the Kwik-Kleen Laundromat business. The remaining twenty percent interest was held by the 727 Realty Trust (727 Trust), which owned the laundry equipment and held title to the real property. Appellants Penelope Nicol and Patricia Washburn were joint trustees of the 727 Trust, and appellant Terrence Washburn was the beneficiary of this trust.

After the relationship between the Garlocks and the Washburns deteriorated, Nicol and Patricia Washburn sued the Garlocks in Illinois state court on behalf of the 727 Trust. The Garlocks filed a third-party complaint against Patricia Washburn and Nicol, as trustees of the 727 Trust, and against Terrence Washburn, individually and as a beneficiary of the 727 Trust. Glen Washburn also filed an action against the same three individuals, alleging that Nicol and Terrence Washburn had misrepresented, concealed, and failed to disclose material facts regarding the ownership of the real property held by the 727 Trust. This action was consolidated with the suit involving the Washburns and the Garlocks. All of the individuals involved in these suits were Illinois residents.

Jerry Soper represented the Washburns in the above-described proceedings. Soper, licensed to practice law in both Illinois and Iowa, maintained his office in Davenport, Iowa. On June 25, 1996, Soper participated in a hearing on the

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

consolidated suits. During this hearing, the trial court encouraged the parties to settle, and Soper engaged in settlement discussions on behalf of his clients. By the next day, the parties' attorneys reached an agreement regarding all of the pending claims. According to the Washburns, Soper coerced them into agreeing to the terms of this settlement.

The Illinois trial court entered an order dismissing both cases pursuant to the settlement agreement. On January 10, 1997, the Washburns, through new counsel, moved to vacate this order. The Washburns' motion was denied, and their subsequent appeals were also unsuccessful.

On December 22, 1999, the Washburns brought a malpractice action against The Soper Law Firm (Firm) in the United States District Court for the Southern District of Iowa. The Firm moved for summary judgment, arguing that the Washburns' claim was barred by Illinois' two-year statute of limitations. The district court agreed and granted the Firm's motion.

II.  Analysis

"We review de novo a grant of summary judgment, applying the same standard as the district court." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002) (citation omitted). In this diversity case, we also review the district court's interpretation of state law de novo. Walk v. Starkey Mach., Inc., 180 F.3d 937, 939 (8th Cir. 1999) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991); Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir.1996)).

In granting the Firm's motion for summary judgment, the district court determined that (1) the Iowa Supreme Court would apply the revised version of Restatement (Second) of Conflict of Laws (Restatement) section 142 if presented with the issue; (2) in accordance with revised section 142, Illinois' two-year statute

of limitations governs the Washburns' malpractice claim; and (3) this statute bars the Washburns' claim. On appeal, the Washburns contend that Iowa's conflict of law rules require us to apply Iowa's five-year statute of limitations to their claim, and that, even if Illinois' two-year statute of limitations governs, it does not bar their claim as a matter of law.

## A. Applicable Choice of Law Rule

The Washburns first argue that the district court applied the wrong choice of law provision. In this diversity case, we apply Iowa's choice of law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Iowa's rules generally "require[] the application of local law to matters of procedure." Cameron v. Hardisty, 407 N.W.2d 595, 596 (Iowa 1987) (citing Brooks v. Engel, 207 N.W.2d 110, 113 (Iowa 1973)). Iowa courts have historically viewed statutes of limitations as procedural, and therefore a local matter. Harris v. Clinton Corn Processing Co., 360 N.W.2d 812, 814 (Iowa 1985). The Iowa Supreme Court recognized that this approach was consistent with the general rules set forth in Restatement section 142 (1971), which provided as follows:

> (1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.
> (2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state, except as stated in § 143.

Id. The Iowa Supreme Court also adopted the "exception" to the general rule of section 142(2), as found in section 143: "[A]n action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy." Restatement (Second) of Conflict of Laws (Restatement) § 143 (1971); see Harris, 360 N.W.2d at 816.

In 1988, sections 142 and 143 were revised and replaced with the following provision:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> . . .
>
> (2) The forum will apply its own statue of limitations permitting the claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement § 142 (1988). Iowa's appellate courts have not yet had the opportunity to consider this revision.

The Washburns contend that the district court erred in using the revised version of section 142 to determine the applicable statute of limitations. They assert that there was no need for the district court to "predict" what the Iowa Supreme Court would do, as that court has already addressed the issue. Referring us to the Harris and Cameron cases, the Washburns contend that Iowa law requires application of the "right-remedy" analysis embodied in the pre-1988 version of sections 142 and 143. We disagree.

The Supreme Court has stated that "[w]hen [the highest court of a state] has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940) (citation omitted); see Gillette Dairy, Inc. v. Mallard Mfg. Corp., 707 F.2d 351, 354 (8th Cir. 1983). As the Firm notes in its brief, the Iowa Supreme Court has repeatedly turned to the Restatement in analyzing choice of law issues. See, e.g.,

Veasley v. CRST Int'l., Inc., 553 N.W.2d 896, 897 (Iowa 1996) (noting, in the context of a personal injury case, that "[w]e now follow the Restatement's 'most significant relationship' methodology for choice of law issues" (citations omitted)); Gabe's Constr. Co., Inc. v. United Capitol Ins. Co., 539 N.W.2d 144, 146 (Iowa 1995) ("We determine choice-of-law issues in insurance policy cases by the intent of the parties or the most significant relationship test." (citation omitted)); Cole v. State Auto. & Cas. Underwriters, 296 N.W.2d 779, 781 (Iowa 1980) ("We think it is clear that choice-of-law questions [involving contract issues] are now to be determined under the Restatement (Second) test: intent of the parties or the most significant relationship."); Cameron, 407 N.W.2d at 597 ("Iowa has adopted the 'modern' choice of law rules [with respect to tort issues] . . . ."); see also Grove v. Principal Mut. Life Ins. Co., 14 F. Supp. 2d 1101, 1106 (S.D. Iowa 1998) ("Iowa has adopted the Second Restatement of Conflicts as its choice-of-law provision." (citing Cole, 296 N.W.2d at 781)); Harlan Feeders, Inc. v. Grand Labs., Inc., 881 F. Supp. 1400, 1405 (N.D. Iowa 1995) ("Iowa applies the 'most significant relationship test' to conflict-of-laws or choice-of-law questions involving either contract or tort claims." (citations omitted)). The Iowa Supreme Court's commitment to the Restatement supplies the requisite "clear and persuasive indication" that it will modify its approach to conflicts involving statutes of limitations when presented with the issue. Accordingly, we conclude that the district court applied the correct choice of law rule.

## B. Interest Analysis under Revised Section 142

Next, the Washburns contend that even if the district court was correct in concluding that the Iowa Supreme Court would adopt the revised version of section 142, the court erred in applying this provision. Under revised section 142(2), Iowa's longer limitations period will apply unless the following conditions exist: (1) maintenance of the claim would not serve any substantial interest of Iowa, (2) Illinois has a "more significant relationship to the parties and the occurrence," and (3) the Illinois statute of limitations would bar the claim. See Restatement § 142(2) (1988).

The comments to revised section 142(2) indicate that, in accordance with the "emerging trend," "a claim will not be maintained if it is barred by the statute of limitations of the state which, <u>with respect to the issue of limitations</u>, is the state of most significant relationship to the occurrence and the parties under the principles stated in § 6." <u>Id.</u> cmt. e (1988) (emphasis supplied).

After reviewing the principles outlined in section 6 of the Restatement, we conclude that the focal points of the choice-of-law inquiry should be the relevant polices of Iowa and Illinois, as well as the basic policies underlying statutes of limitations. <u>See</u> <u>id.</u> § 6(2)(b), (c), (e).[2] The purpose of such statutes is essentially two-fold: to protect both defendants and courts from stale claims. <u>See, e.g.</u>, <u>K.E.S. v. United States</u>, 38 F.3d 1027, 1030 (8th Cir. 1994) (noting that the purpose of statutes of limitations is "to 'protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence,' while 'affording plaintiffs what the legislature deems a reasonable time to present their claims.'") (quoting <u>United States v. Kubrick</u>, 444 U.S. 111, 117 (1979)); <u>see also</u> <u>Lawyers Title Ins. Corp. v. Dearborn Title Corp</u>., 118 F.3d 1157, 1166 (7th Cir. 1997) ("Statutes of limitations are ordinarily for the protection of defendants[,] . . . but they also protect the courts from the burden of adjudicating old claims." (citations omitted)). As Soper notes in his brief, the Firm is a "corporate resident" of Iowa. Thus, applying Iowa's longer limitations period would undermine its interest

---

[2]Section 6 lists several factors that are relevant to the choice of law analysis:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement § 6(2) (1971).

in protecting resident defendants. We recognize that Iowa has an interest in protecting those who retain Iowa attorneys from becoming the victims of professional negligence and in affording parties "a reasonable time to present their claims." K.E.S., 38 F.3d at 1030. Iowa also undoubtedly has an interest in maintaining the integrity of its bar. Nevertheless, we are not persuaded that these interests are "substantial" in circumstances such as this, where the plaintiffs are Illinois residents, the defendant attorney is licensed in both Iowa and Illinois, the defendant attorney was retained to represent the plaintiffs in Illinois state court proceedings, and these proceedings concerned Illinois residents, Illinois businesses, Illinois trust agreements, and Illinois contracts. In short, we agree with the Firm that Illinois has a "more significant relationship to the parties and the occurrence." Restatement § 142(2)(b) (1988).

## C. Application of Illinois' Statute of Limitations

Finally, the Washburns contend that the district court erred in concluding that the Illinois statute of limitations barred their malpractice claim as a matter of law. Illinois has incorporated the "discovery rule" into its limitations provision for legal malpractice claims. Such claims must be brought within two years from the time when the plaintiff "knew or reasonably should have known of the injury for which damages are sought." 735 Ill. Comp. Stat. 5/13-214.3(b). Thus, "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." Hermitage Corp. v. Contractors Adjustment Co., 651 N.E.2d 1132, 1139 (Ill. 1995) (internal quotation marks and citations omitted). "The time at which a party has or should have the requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact." Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 633 N.E.2d 627, 631 (Ill. 1994) (citation omitted). Summary judgment is therefore appropriate "only if the undisputed facts allow for only one conclusion": that more

than two years elapsed between the time when the Washburns knew or should have known of their injury, and December 22, 1999, when the Washburns filed their complaint. Id.

The district court found as a matter of law that "the latest date at which [the Washburns] knew or reasonably should have known of the actionable malpractice is the date they filed the motion to vacate the settlement agreement on the grounds of unconscionability." Although the district court was unable to determine the date of that filing, it noted that the hearing on the motion took place in November 1997. The court therefore concluded that because the complaint was filed more than two years after the hearing, the Washburns' claim was time-barred.[3]

In attempting to demonstrate that genuine issues of material fact remain as to the issue of when they knew or reasonably should have known of their injuries, the Washburns direct us to their deposition testimony. Both Terrence Washburn and Penelope Nicol were careful to maintain that although they felt that they had been coerced into settling, they did not realize that Soper's conduct constituted malpractice

---

[3]The Washburns point "to an apparent misunderstanding by the district court judge regarding what [they] were alleging in their Motion to Vacate the settlement and dismissal and what they knew or were aware of regarding the wrongful nature of Soper's activities at the time they filed their Motion to Vacate." According to the Washburns, the coercion and duress alleged in their motion to vacate related to conduct by the state trial court judge, not Soper. Thus, the Washburns conclude, the district court's finding as to when they "knew or reasonably should have known of the actionable malpractice" is not supported by the record.

After reviewing the record, we agree that the Washburns did not raise the issue of Soper's alleged misconduct in connection with their motion to vacate. We are not persuaded, however, that the district court's finding was based on a "misunderstanding," as earlier in its opinion, the court recognized that "the issue of Soper's alleged intimidation and coercive actions was not a material issue in the state court proceedings."

until they spoke with an attorney in March 1998. If the discovery rule were a purely subjective test, we might well agree that such testimony would preclude summary judgment. As discussed above, however, the relevant inquiry includes an objective component. Here, the record indicates that by the time they filed their motion to vacate, the Washburns believed that the terms of the settlement agreement were both "inequitable and unconscionable." (Motion to Vacate Dismissal ¶ 3.) By this point, the Washburns also believed that they had been coerced by Soper into settling. On these facts, the only reasonable inference that can be drawn is that a reasonable person, with such knowledge, would be on notice that he was injured and that the injury may have been wrongfully caused. See Vector-Springfield Props., Ltd. v. Central Ill. Light Co., Inc., 108 F.3d 806, 810 (7th Cir. 1997); Hermitage Corp., 651 N.E.2d at 1139; see also Belden v. Emmerman, 560 N.E.2d 1180, 1182-83 (Ill. App. Ct. 1990) (concluding that where the defendants had allegedly entered into a settlement agreement over the plaintiffs' objection, the plaintiffs "had knowledge of damages" as of the day of the settlement conference, "[g]iven the nature of defendants' alleged activities and plaintiffs' knowledge of them at the time of the alleged breach").

The Washburns also suggest that the statute of limitations could not have started running until June 1999, when the Illinois Supreme Court denied their petition for leave to appeal the Illinois Court of Appeals' decision regarding their motion to vacate. According to the Washburns, "they were [not] actually damaged by Soper's malpractice" until that time. This argument is foreclosed by the Illinois Supreme Court's decision in Hermitage Corp. 651 N.E.2d at 1139 (recognizing that although the trial court could have reconsidered its adverse decision, the limitations period was triggered by this decision, as "[o]therwise, the statute of limitations could be postponed indefinitely until all avenues of appeal in the earlier suit were exhausted"). The Washburns also note that although "the incurring of additional attorney fees may trigger the running of the statute of limitations for legal malpractice purposes," this rule applies "only where it is clear, at the time the additional fees are incurred, that

the fees are <u>directly attributable</u> to former counsel's neglect (such as through a ruling adverse to the client to that effect)." <u>Lucey v. Law Offices of Pretzel & Stouffer, Chartered</u>, 703 N.E.2d 473, 478 (Ill. App. Ct. 1998) (emphasis supplied). Here, the Washburns contend, "[their] payment of fees to a new attorney was not, as required, clearly 'attributable to former counsel's neglect.'" We are not persuaded. In their depositions, Terrence Washburn and Penelope Nicol indicated that they would not have signed the settlement agreement, but for Soper's coercive tactics. Thus, even though the Washburns did not include allegations of coercion by Soper in their motion to vacate the settlement agreement, we are satisfied that the fees they incurred in bringing this motion were "directly attributable" to Soper's alleged misconduct. <u>See</u> <u>id.</u>

For the reasons discussed above, we find that the Washburns failed to demonstrate the existence of any genuine factual issue as to when they "knew or reasonably should have known of the injury for which damages are sought." 735 Ill. Comp. Stat. 5/13-214.3(b); <u>see</u> <u>Hermitage Corp.</u>, 651 N.E.2d at 1138-39 ("When a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving the date of discovery." (citations omitted)). We therefore conclude that, in accordance with revised section 142(2) of the Restatement, Illinois' two-year statute of limitations bars the Washburns' malpractice claim as a matter of law.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.